**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jose A. CARRASQUILLO, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 13, 2013.

Filed Oct. 8, 2013.

---

Courtney B. Kirschner, Public Defender, Philadelphia, for appellant.

Daniel F. Creedon, IV, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, P.J., GANTMAN, J., PANELLA, J., DONOHUE, J., SHOGAN, J., LAZARUS, J., MUNDY, J., OTT, J., and WECHT, J.

OPINION BY WECHT, J.

Jose Carrasquillo ("Appellant") appeals from the judgment of sentence entered on November 30, 2010. Originally, Appellant pleaded guilty to two counts of unlawful contact with a minor,[1] and one count each of rape,[2] involuntary deviate sexual intercourse,[3] aggravated indecent assault,[4] aggravated assault,[5] unlawful restraint,[6] interference with the custody of a child,[7] and

ethnic intimidation.[8] However, at his sentencing hearing, Appellant sought to withdraw his guilty plea on the basis that he was innocent. The sentencing court denied his motion.

We vacate the judgment of sentence, and we remand this case for trial on the original counts.

\*　　　\*　　　\*

In its opinion, the learned trial court summarized the troubling facts of this case as follows:

> On June 1, 2009, at approximately 7:10 a.m., [Appellant] sexually assaulted a sixteen-year-old girl as she walked to school by grabbing her breast as he attempted to engage her in conversation. The girl was able to get away and run to school, where she reported the incident to a staff member. After talking to [the] staff, the girl went to the cafeteria and was talking to [her] friends when she saw [Appellant] walk through the cafeteria and approach her. She screamed and fled from the school.
>
> [One hour later], at approximately 8:10 a.m., [Appellant] violently raped an eleven-year-old girl [ ("N.O.") ] as she walked to school by penetrating her anally and vaginally with his fingers and penis, and by putting his penis in her mouth. Responding officers observed that the girl was covered in blood from the waist down. The girl suffered severe vaginal lacerations, for which she had to have surgery[,] and other injuries as a result of the assault. She remained hospitalized until June 3, 2009.

Trial Court Opinion ("T.C.O."), 12/29/2011 at 1–2 (paragraphs reordered for chrono-

1. 18 Pa.C.S. § 6318(a)(1).

2. 18 Pa.C.S. § 3121(a)(1).

3. 18 Pa.C.S. § 3123(a)(1).

4. 18 Pa.C.S. § 3125(a)(1).

5. 18 Pa.C.S. § 2702(a)(1).

6. 18 Pa.C.S. § 2902(a)(1).

7. 18 Pa.C.S. § 2904(a).

8. 18 Pa.C.S. § 2701(a)(1).

logical clarity, citations to transcript omitted).

On August 11, 2010, Appellant pleaded guilty to the above-listed charges. Notes of Testimony ("N.T."), 8/11/2010, at 6–12. During the plea colloquy, the trial court informed Appellant of his trial and appellate rights, as well as the consequences associated with pleading guilty. *Id.*, at 6–31. The trial court further confirmed that Appellant was competent to enter his plea. *Id.*, at 31. The trial court concluded that, "based on the oral colloquy and [Appellant's] execution of written guilty plea forms, [Appellant's] waivers were found to be knowing, intelligent, and voluntary." T.C.O. at 3.

On November 30, 2010, the parties returned to the trial court for sentencing. The Commonwealth presented testimony from numerous witnesses, including members of N.O.'s family, and also played a videotaped victim impact statement from N.O. T.C.O. at 4–6; N.T., 11/30/2010, at 85–87. Following that testimony, Appellant made the following statement by way of allocution:

> I don't even know how to start this. It's a lot more to this than what people think, you know, and I took this plea even though I didn't want to take it and just to save [N.O.] pain and suffering, you know. But when I sit here and I look at everything and I see [N.O.'s] family sit here and everybody in the world badgering me and constantly saying, oh this, that, you are the bad guy, you know, I was letting you know I will never get a fair trial here, and the reason why I took my plea as well. But I know my story wouldn't stick and nobody here would believe my story either unless they had a polyester graph [*sic*] and lie detector, then maybe the truth would come to light. And I want the [c]ourt to know that it wasn't on record, you know.

> In 2002[,] I was locked up and an event occurred, and in this event the Antichrist came out of me. It may sound crazy, but what happened was the CIA came to me and tried to cover it up and I have been attacked several times ever since this event happened. It happened while the serpent was present by the boat. The Antichrist, he came out of me, and ever since then this has been happening I've been attacked. I'm not talking about just this event. They knew I was going to leave, you know, and then now I've got immigration I'm dealing with. They keep coming to me, giving me offers to go to China and stuff like that to assassinate the president over there, stuff like that. And regardless, I know one thing for sure, they also gave me a polyester graph [*sic*], a lie detector test that would prove my innocence.

> But why am I going to fight a case if I've been framed by the system? How am I going to fight a case? There's nowhere to act. I guarantee that if I have a polyester graph [*sic*] that everything, every word I said right now would not come out a lie, because **I didn't commit this crime.**

N.T., 11/30/2010, at 122–24 (emphasis added).

After Appellant's allocution statement, the trial court asked whether Appellant wanted to withdraw his guilty plea. Appellant answered in the affirmative. N.T., 11/30/2010, at 124, 128–29. Appellant and his counsel both reasserted that Appellant was innocent of the crimes to which he had previously pleaded guilty. *See id.*, at 129 ("Your Honor, Mr. Carrasquillo has informed me that he is innocent[.]"); *id.*, at 130 ("To prove my innocence …"). The Commonwealth objected, asserting that permitting Appellant to withdraw his guilty plea would result in substantial prejudice to the Commonwealth. *Id.*, at 130–31. The Commonwealth averred that, in

reliance upon Appellant's guilty plea, it had already assured N.O. that she would not have to testify. *Id.*, at 127–28.

The trial court denied Appellant's motion to withdraw his guilty plea, finding that Appellant "was not acting in good faith and withdrawal would cause substantial prejudice to the Commonwealth." T.C.O. at 8. The trial court found compelling the Commonwealth's argument that forcing N.O. to testify at trial would be "extremely prejudicial to her well-being." *Id.* (citation omitted). The trial court stated: "We are talking about an 11-year-old child. I'm looking at this situation involving the trauma to this particular child under these circumstances as being substantially prejudicial to the Commonwealth and its witness." N.T., 11/30/2010, at 127.

After the trial court denied Appellant's oral motion to withdraw his plea, it sentenced Appellant to an aggregate term of thirty to sixty-six years' imprisonment. T.C.O. at 8. This timely appeal followed. On April 26, 2011, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 11, 2011, Appellant timely complied. On October 23, 2012, a panel of this Court issued a memorandum opinion vacating Appellant's judgment of sentence and remanding the matter to the trial court. On November 1, 2012, the Commonwealth requested reargument *en banc*, which this Court granted. The case has now been briefed and argued to this Court *en banc*.

\* \* \*

As he did before the initial panel, Appellant raises one issue for our consideration:

> Did not the lower court err in denying [A]ppellant's request to withdraw his guilty plea where the request was made prior to the imposition of sentence, [A]ppellant presented a fair and just reason for the withdrawal of the plea, and the Commonwealth would not have been substantially prejudiced by the withdrawal?

Brief for Appellant at 3. A trial court may grant a motion for the withdrawal of a guilty plea at its discretion any time before the imposition of sentence. Pa.R.Crim.P. 591(A). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made *before* sentencing ... should be liberally allowed." *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268, 271 (1973) (emphasis in original).[9] Our Supreme Court has clearly articulated the policy behind this liberal exercise of discretion: "The trial courts in exercising their discretion must recognize that 'before judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our Constitution.'" *Commonwealth v. Santos*, 450 Pa. 492, 301 A.2d 829, 830 (1973) (quoting *Commonwealth v. Neely*, 449 Pa. 3, 295 A.2d 75, 76 (1972)).[10]

---

9. We note at the outset the well-settled principle that the severity or notoriety of the crime charged is immaterial to the application of the legal test. *See, e.g., Commonwealth v. Parrish*, —— Pa. —— & n. 2, 77 A.3d 557, 560–61 & n. 2 (2013) (plea withdrawal granted in capital murder case; appellant convicted at trial of killing girlfriend and their 19-month-old son).

10. By way of contrast, we apply a much more exacting standard when the defendant moves to withdraw his guilty plea following the imposition of sentence. Such motions are "subject to higher scrutiny [than pre-sentence motions] because courts strive to discourage entry of guilty pleas as sentence-testing devices." *Commonwealth v. Broaden*, 980 A.2d 124, 129 (Pa.Super.2009) (quoting *Commonwealth v. Flick*, 802 A.2d 620, 623

In *Forbes,* our Supreme Court provided the framework for evaluating presentencing requests to withdraw guilty pleas. There, the Court instructed that, "in determining whether to grant a presentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.' " *Forbes,* 299 A.2d at 271 (quoting *United States v. Stayton,* 408 F.2d 559, 561 (3d Cir.1969)). Specifically, *Forbes* established a two-part standard: "If the trial court finds 'any fair and just reason,' withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.' " *Forbes,* 299 A.2d at 271 (citation omitted). The *Forbes* test was reaffirmed by the Pennsylvania Supreme Court in *Commonwealth v. Randolph,* 553 Pa. 224, 718 A.2d 1242, 1245 (1998), and was recently reiterated and followed by this Court, sitting *en banc* in *Commonwealth v. Katonka,* 33 A.3d 44, 46–48 (Pa.Super.2011). Additionally, we have held that the presentence standard for withdrawal applies when a motion to withdraw a guilty plea is made during a sentencing hearing, but before the sentence has been imposed. *Commonwealth v. Carr,* 375 Pa.Super. 168, 543 A.2d 1232, 1233 (1988).

It bears emphasis that we do not write here on a blank slate. "Although it is apparently an extremely unpopular rule with prosecutors and trial courts, since *Forbes,* caselaw has continuously upheld an assertion of innocence as a fair and just reason for seeking the withdrawal of a guilty plea." *Commonwealth v. Kirsch,* 930 A.2d 1282, 1285 (Pa.Super.2007), *appeal denied,* 596 Pa. 727, 945 A.2d 168 (2008); *see also Randolph,* 718 A.2d at 1244; *Katonka,* 33 A.3d at 50.

(Pa.Super.2002)). "A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea." *Broaden,*

■ In our appellate capacity, we keep in mind that "[a] trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion. An abuse of discretion exists when a defendant shows any 'fair and just' reasons for withdrawing his plea absent 'substantial prejudice' to the Commonwealth." *Commonwealth v. Pardo,* 35 A.3d 1222, 1227 (Pa.Super.2011) (quoting *Commonwealth v. Prysock,* 972 A.2d 539, 541 (Pa.Super.2009); *Commonwealth v. Anthony,* 504 Pa. 551, 475 A.2d 1303, 1308 (1984)). "[A]n assertion of innocence may constitute a fair and just reason for the pre-sentence withdrawal of a guilty plea." *Commonwealth v. Miller,* 432 Pa.Super. 619, 639 A.2d 815, 816–17 (1994); *Forbes,* 299 A.2d at 271.

In light of the above-stated principles, our appellate task is clear. We must determine: (1) whether Appellant's assertion of innocence qualified as a "fair and just reason" such that it would allow him to withdraw his guilty plea; and (2) whether the Commonwealth would suffer "substantial prejudice" as a result of that withdrawal. *Forbes,* 299 A.2d at 271.

\* \* \*

■ Appellant contends that he demonstrated a fair and just reason to support withdrawal of his plea, to wit, actual innocence:

> The fact that [A]ppellant included in his motion references to the CIA, the Antichrist, and a frame-up does not negate his repeated claims of innocence.... The fact that he participated in a guilty plea colloquy does not negate his claims of innocence. [Appellant's] requests for a lie detector test and a full investigation were not a condition for withdrawing his

980 A.2d at 129 (citing *Commonwealth v. Gunter,* 565 Pa. 79, 771 A.2d 767, 771 (2001)).

plea, but rather were offered in support of his assertion of innocence. And the fact that [A]ppellant made his motion late into the sentencing hearing, but still before imposition of sentence, has never been a basis to deny a request to withdraw a plea.

Brief for Appellant at 9–11.

The Commonwealth replies that the trial court was correct in denying Appellant's motion. The Commonwealth argues that, while a clear assertion of innocence is a fair and just reason to permit withdrawal of a guilty plea, incoherent, "merely *pro forma* [,] or unbelievable assertions seemingly wielded for gamesmanship do not satisfy the general rule." Brief for Commonwealth at 14–15. "While [Appellant] made vague or bizarre statements about prospectively proving his innocence, he neither appeared to be credible in asserting his innocence, nor did he offer any rational support for that notion." *Id.* at 18. The Commonwealth also maintains that Appellant's assertion of innocence was conditional, because Appellant alleged the existence of an exonerating polygraph test and requested further investigation into the matter. *Id.* at 16–18.

The trial court found that Appellant's "assertion of innocence conditioned on a polygraph exam" was "not a fair and just reason to grant withdrawal." T.C.O. at 10. The trial court concluded that Appellant's "outburst [was] insincere and nothing more than an attempt to manipulate the justice system." *Id.* While the trial court's analysis was far from cavalier, we nevertheless are constrained to disagree with it.

■ Appellant made fantastical and outlandish claims during his sentencing hearing. Yet, his protestation of innocence was clear: "I didn't commit this crime." N.T., 11/30/2010, at 124. The Commonwealth's assertions to the contrary notwithstanding, Appellant's plea was not conditioned upon a polygraph test. *Id.* at 123–24. Rather,

Appellant maintained that such a test would verify his innocence. *Id* at 123–24, 131. Further, while Appellant presumably will need to articulate some "rational support" for his innocence claim in the event he chooses to testify in his own defense at trial, our law does not (contrary to the Commonwealth's suggestion) require some quantum of "rational support" as a prerequisite for a plea withdrawal.

The Commonwealth relies heavily upon the case of *Commonwealth v. Tennison,* 969 A.2d 572 (Pa.Super.2009), to support its arguments challenging the validity of Appellant's assertion of innocence. Brief for Commonwealth at 14–19. In *Tennison,* the defendant attempted to withdraw his guilty and no-contest pleas in order to preclude the resulting state convictions from affecting his impending sentence in a separate, upcoming federal case. *Tennison,* 969 A.2d at 573–76. That was the sole reason advanced by the defendant for asserting his innocence and attempting to withdraw his guilty plea. In fact, the *Tennison* defendant declared his putative innocence only after the Commonwealth objected to his attempts to withdraw his pleas on the basis that he had not yet asserted that he was innocent of the crimes. *Id.* Additionally, defendant's attorney actually went so far as to advise the trial court that any assertion of innocence made by his client in support of the motion to withdraw his pleas "may not be true." *Id.* at 575. Ultimately, the trial court denied the defendant's motion on the basis that the defendant's concern about the effect of his state sentence on the sentencing in a separate federal case was not a "fair and just" reason to withdraw his plea. Rather, it was simply a crass attempt by the defendant to get "the best possible deal." *Id.* at 576.

On appeal, we upheld the trial court's denial of defendant's motion to withdraw.

We determined that the defendant's "conditional assertion of innocence—invoked at the prospect of being sentenced, withdrawn at the prospect of receiving yet another continuance—was anything but clear." *Id.* at 577. We observed that the defendant's assertion of innocence "would be completely contradicted by statements admitting guilt should sentence be deferred until resolution of the federal case." *Id.*

Relying heavily upon *Tennison*, the Commonwealth presents what we discern as three well-reasoned but ultimately unavailing challenges against Appellant's withdrawn plea: (1) that Appellant's assertion of innocence was not "clear" by reason of its "vague or bizarre" content; (2) that Appellant's plea withdrawal was properly denied on the basis of the evidence being offered against him; and (3) that Appellant was attempting to undermine the criminal justice system through "pretextual gamesmanship." *See* Brief for Commonwealth at 14–20. Application of precedent shows that, in the instant case, each of these three arguments is unsuccessful. We address each in turn.

The Commonwealth suggests that *Tennison* supports the blanket proposition that "incredible," "wild assertions" of innocence serve to invalidate motions for withdrawal of guilty pleas. Brief for Commonwealth at 14–15. This overstates our holding in *Tennison*, in which we ruled only that, "[u]nder the specific facts of [the] case," it was proper to deny the defendant's request to withdraw his pleas because the request was "simply pretextual" in nature. 969 A.2d at 578. In *Katonka*, we endorsed an equally fact-specific interpretation of *Tennison*. Sitting *en banc*, we specifically noted that the panel in *Tennison* "limited its holding to the specific facts of the case." *Katonka*, 33 A.3d at 48. We find no basis in precedent to authorize trial courts to import a rationality test or to examine the clarity or articulateness of movants' words in these circumstances. We are unprepared to bar an otherwise lawful motion because the language used includes not only a clear assertion of innocence, but also outlandish verbiage and extraneous references.[11]

■■ The Commonwealth also appears to argue that the strength of the evidence arrayed against Appellant—including his confession to police, DNA evidence, fingerprint evidence, and his statements at the guilty plea colloquy—should invalidate his assertion of innocence as unbelievable. Brief for Commonwealth at 18–19. While not plainly unreasonable as a policy abstraction, the Commonwealth's proposal finds no support in current Pennsylvania law. Our applicable precedent unequivocally holds that: (1) "participation in a guilty plea colloquy does not prevent a defendant from later seeking to withdraw his guilty plea," *Katonka*, 33 A.3d at 49–50 (citing *Kirsch*, 930 A.2d at 1286 ("[I]t is

---

11. While the learned dissent appropriately notes that *Tennison* and *Katonka* disfavor contradictory or conditional assertions of innocence, its attempted application of that principle to the instant context is unconvincing. In *Tennison*, this Court upheld a denial of plea withdrawal because the appellant's attempt shamelessly was calculated to procure a favorable sentencing result, an artifice that vitiated the credibility of the appellant's assertion of innocence. *See Tennison*, 969 A.2d at 577 ("Appellant's conditional assertion of innocence—invoked at the prospect of being sentenced, withdrawn at the prospect of receiving yet another continuance—was anything but clear."). Instantly, there is no evidence, nor even any serious allegation, that Appellant's assertion of innocence was prompted by subterfuge or ulterior motive. While the dissent uncontroversially observes that *Katonka* "accepted" *Tennison* (Diss. Op. at 1134 n. 1), the dissent fails to demonstrate any meaningful parallels between the instant case and the gamesmanship we disallowed in *Tennison*. In short, *Tennison* is as readily distinguishable here as it was in *Katonka*.

clear that acknowledging guilt at the plea colloquy does not prevent the later withdrawal upon a later inconsistent assertion of innocence.")); and, (2) evidence, such as a confession to police, that could be used to prove defendant's guilt at trial "[does] not bear upon his assertion of innocence in a pre-sentencing motion to withdraw a guilty plea." *Id.* (citing *Commonwealth v. Wright*, 609 Pa. 22, 14 A.3d 798, 816 (2011)) ("[E]ven if a confession has properly been admitted into evidence at trial, a finder of fact is still not compelled to believe the matters contained in the confession and to automatically return a verdict of guilty, since the confession is not decisive of the issue of the defendant's guilt or innocence."). We have made it clear that, in assessing a defendant's presentence petition to withdraw a guilty plea, trial courts are "not permitted to make a determination regarding the sincerity of [defendants'] unambiguous claims of innocence." *Commonwealth v. Unangst*, 71 A.3d 1017, 1022, 2013 PA Super 196 (2013); *see Katonka*, 33 A.3d at 49–50.

Last, the Commonwealth asserts that Appellant seeks to withdraw his guilty plea on the basis of an unspecified, but nonetheless allegedly disabling, ulterior motive. Brief for Commonwealth at 19. In *Tennison*, it was clear to a panel of our Court that the defendant was attempting brazenly to "game" the judicial system by delaying his Pennsylvania sentencing until after he had been sentenced in federal court. Instantly, there are no specific allegations presented by the Commonwealth that Appellant seeks to undermine the criminal justice system in any way. Instead, we are given a sweeping declaration that "[e]very defendant who moves to withdraw his plea has an 'ulterior motive,' namely, a different and more favorable outcome." Brief for Commonwealth at 19. We rejected this same kind of conclusory argument in our recent decision in *Unangst*:

> [A]ny time a defendant moves to withdraw a guilty plea prior to sentencing, he could be accused of engaging in a dilatory tactic to avoid sentencing. Thus, if we were to permit this type of reasoning to defeat a presentence motion to withdraw, we would be ignoring the clear pronouncements from our Supreme Court in *Forbes* and *Randolph*.

*Unangst*, 2013 PA Super 196, 71 A.3d at 1022. The Commonwealth has advanced no evidence that the Appellant in the case *sub judice* asserted his innocence as a pretext, or as a ploy to game the system.

We are constrained by precedent to conclude that Appellant's presentence assertion of innocence is a "fair and just" reason to grant his guilty plea withdrawal. *See Katonka*, 33 A.3d at 49; *Randolph*, 718 A.2d at 1245; *Miller*, 639 A.2d at 816–17; *Forbes*, 299 A.2d at 271.[12]

\* \* \*

---

12. In addition to *Tennison* (*see supra* n. 11), the learned dissent relies principally on *Commonwealth v. Walker*, 26 A.3d 525 (Pa.Super.2011), to support its view that Appellant "did not provide a fair and just reason for the withdrawal of his guilty plea." Diss. Op. at 1136. In *Walker*, this Court affirmed a sentencing court's denial of a motion to withdraw a plea of guilty but mentally ill on the following bases: (1) that it was the second time that the appellant had attempted to withdraw a guilty plea, a circumstance which struck the court as an attempt improperly to manipulate the criminal justice system, *see* *Walker*, 26 A.3d at 530; *accord Commonwealth v. Iseley*, 419 Pa.Super. 364, 615 A.2d 408, 414 (1992) ("Appellant's assertion of innocence at this late stage smacks of little other than a self-serving attempt to improperly manipulate the system[.]"); and (2) that "Appellant offered 'dubious grounds' for withdrawing his plea.... Appellant merely speculated that the Commonwealth possessed a videotape that would exonerate him." *Walker*, 26 A.3d at 530–31 (citing *Iseley*, 615 A.2d at 414). This Court found that the appellant's utter inability to produce the alleged videotape, coupled with his failure explicitly to state his innocence during the attempted

■ We must now consider whether Appellant's withdrawal of his guilty motion will substantially prejudice the Commonwealth. *See Forbes,* 299 A.2d at 271.

[P]rejudice would require a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled. This follows from the fact that the consequence of granting the motion is to put the parties back in the pre-trial stage of proceedings. This further follows from the logical proposition that **prejudice cannot be equated with the Commonwealth being made to do something it was already obligated to do prior to the entry of the plea.**

*Kirsch,* 930 A.2d at 1286 (emphasis added). "Thus, prejudice is about the Commonwealth's ability to try its case, not about the personal inconvenience to complainants unless that inconvenience somehow im-

pairs the Commonwealth's prosecution." *Commonwealth v. Gordy,* 73 A.3d 620, 624 (Pa.Super.2013).

The Commonwealth argues that, in reliance upon Appellant's guilty plea, it assured N.O. that she would not have to testify at a trial. Brief for Commonwealth at 21. The Commonwealth contends that allowing Appellant to withdraw his guilty plea "threatened to bring about unnecessary delay which could affect the victim's ability to remember the events and details of her abuse." *Id.* at 22.

■ We are profoundly sympathetic to the Commonwealth's desire to shield N.O. from the emotional discomfort likely to result from testifying. Yet, it is plain that this humane desire does not suffice as a matter of law to substantiate a claim of substantial prejudice.[13] Had Appellant never pleaded guilty, the Commonwealth would have been in the same position regarding victim testimony as it would have

---

withdrawal, operated to defeat his claim. *Walker,* 26 A.3d at 531 ("At no point did Appellant expressly state that he did not commit the offense[.]").

Citing *Walker,* the dissent argues here that, because "Appellant made no less [*sic* ] than five requests for the trial court to order a polygraph examination," his assertion of innocence should be treated "as a conditional withdrawal of a guilty plea, which is not a fair and just reason to do so." Diss. Op. at 1135. *Walker* is inapposite. In the case at bar, Appellant's withdrawal motion represents the first time that he attempted to change his plea. There can be no allegation that Appellant's withdrawal was serial in nature, as it was in *Walker.* The only similarity between *Walker* and the instant case lies in the respective appellants' references to extrinsic evidence in seeking to withdraw their pleas. The similarity is superficial.

In *Walker,* the appellant asserted innocence predicated solely upon the alleged existence of an exonerating videotape that purportedly was in the possession of the Commonwealth at the time of the sentencing hearing. *Walker,* 26 A.3d at 531. The court rejected appellant's motion to withdraw after he "was unable to produce the videotape or even de-

scribe what it would depict." *Id.* at 530. Instantly, by contrast, Appellant made no reference to any existing evidence to support his claims of innocence. Rather, Appellant merely urged the court that a "full investigation" of his case, including a potential polygraph examination, would confirm his innocence at trial. N.T., 11/30/2011, at 122–30. Furthermore, the lack of clarity complained of in *Walker*—to wit, that the appellant had not stated that he did not commit the crime—is not applicable in the instant case, wherein Appellant clearly stated "I didn't commit this crime" during his allocution and asserted his innocence throughout the proceeding. *Compare Walker,* 26 A.3d at 530–31, *with* N.T., 11/30/2011, at 122–24, 128–30.

13. With reference, again, to the learned dissent's reliance on *Walker,* we observe that, in affirming the sentencing court's denial of plea withdrawal in that case, we expressed agreement with the court's finding of substantial prejudice to the Commonwealth. *Walker,* 26 A.3d at 531. By contrast, in the case *sub judice,* the dissent does not challenge our contrary finding of no substantial prejudice. *See* Diss. Op. at 1132–36.

been had the trial court allowed Appellant to withdraw his plea prior to sentencing. Nor does the bald assertion that the victim's memory "could" be affected by this delay amount to substantial prejudice. *Commonwealth v. Middleton*, 504 Pa. 352, 473 A.2d 1358, 1360–61 (1984) (surmising that witness "may" suffer memory lapses is mere speculation and does not demonstrate substantial prejudice).

To support its claim of substantial prejudice, the Commonwealth cites several inapposite cases. Brief for Commonwealth at 21–22. In *Commonwealth v. Carr,* we noted that the memory of the five-year-old victim may have dulled after an eight-month delay in proceedings. 375 Pa.Super. 168, 543 A.2d 1232, 1234 (1988). The Commonwealth claims that *Carr* establishes that pre-sentence requests to withdraw a guilty plea are substantially prejudicial where such a withdrawal "would affect a minor victim's ability to testify as to his or her sexual abuse." Brief for Commonwealth at 21. However, our finding of substantial prejudice in *Carr* rested almost exclusively upon the fact that the family members of the five-year-old victim had become reluctant to testify. *Id.* ("[T]he reluctance of family members to testify in a way which would cause the incarceration of appellant is evident, and would have significantly impaired the prosecution of this case.") Our discussion of the effect of delay on the victim's memory in *Carr* was limited to a single sentence offering additional support to our finding of substantial prejudice on the basis that the witnesses' sympathies had shifted away from the victim and toward the defendant, who also was a family member. *Id.* Instantly, the Commonwealth has produced no evidence that Appellant's withdrawal of his guilty plea will precipitate an adverse change in the witnesses' availability or their respective willingness to testify.

The Commonwealth also cites *Commonwealth v. Ammon.* Brief for Commonwealth at 22. In *Ammon,* we found substantial prejudice with regard to the defendant's attempt to withdraw a nolo contendere plea mid-trial chiefly because a jury had been selected, trial had begun, and the child victim in the case already had provided thirty-one pages of direct testimony when the request to withdraw was made. 275 Pa.Super. 324, 418 A.2d 744, 748 (1980). None of those factors are present in the case *sub judice.*

The Commonwealth invokes *Commonwealth v. Ross,* 498 Pa. 512, 447 A.2d 943, 943–44 (1982), in which our Supreme Court stated in a one-page opinion that the plea withdrawal was properly denied and prejudice was established because the Commonwealth had relied upon the plea in dismissing several witnesses. Brief for Commonwealth at 22. We can discern no prejudice in the case before us based upon the sparse reasoning provided in *Ross.* Applying the standard set forth in *Kirsch* to the case before us, we cannot identify any events that have occurred since Appellant's guilty plea that would place the Commonwealth in a worse position than it would have occupied had the trial taken place as scheduled. *Kirsch,* 930 A.2d at 1286.

The Commonwealth also relies upon *Commonwealth v. Dickter,* 318 Pa.Super. 372, 465 A.2d 1 (1983). There, we found substantial prejudice where a delay caused by a guilty plea withdrawal resulted in the reduced ability of young victims to testify. *Id.* at 2. The Commonwealth cites *Dickter* for the proposition that delay which adversely affects "a minor victim's ability to testify as to his or her sexual abuse" qualifies as substantial prejudice. Brief for Commonwealth at 21. The Commonwealth argues that "the testimony of the minor rape victim would now be impaired due to the delay caused by [Appellant's]

withdrawal motion." *Id.* However, the delay complained of in *Dickter* extended for four and one-half years, a significantly longer period of time than the approximately two years that have passed in the case before us. *Dickter,* 465 A.2d at 2. Further, the delay in *Dickter* was aggravated and prolonged by the defendant's "unlawful flight" overseas while on bail. *Id.* We concluded that we could not "permit [the appellant] to prejudice the Commonwealth's position by his own illegal conduct." *Id.* at 2–3. Here, the Commonwealth has offered no evidence or argument that any additional illegal conduct by Appellant has exacerbated the delay in this case.

 Moreover, recent Pennsylvania precedent establishes that the correct yardstick for measuring delay is in fact the period of time between the Appellant's guilty plea and his motion to withdraw. *See Gordy,* 73 A.3d at 625–27. In *Gordy,* an additional delay of two months resulting from defendant's plea withdrawal was insufficient to establish substantial prejudice, even though approximately ten years had passed between the alleged incidents and the defendant's guilty plea. *Id.* at 627 ("Whatever degradation of memory may have occurred in the nine or ten years between the alleged incidents and the guilty pleas, that degradation could not possibly have resulted from Appellant's **later** decision to withdraw his plea.") (emphasis in original). Although the Commonwealth argues here that "[n]early three and a half years have passed since [Appellant's] offenses," Brief for Commonwealth at 22, *Gordy* clearly provides that the time between the offense and the motion to withdraw a plea is not our relevant point of inquiry with regard to delay. Rather, we must focus on the time period between Appellant's guilty plea on August 11, 2010, and the sentencing hearing on November 30, 2010. Therefore, the delay alleged in this case properly is fixed at approximately three months—not three and one-half years. *Gordy,* 73 A.3d at 625–27. We cannot determine that a delay of approximately three months qualifies as substantial prejudice on its own. The cases finding substantial prejudice relied upon additional prejudicial factors, such as the changes in familial support cited in *Carr* or the defendant's willful flight in *Dickter. Carr,* 543 A.2d at 1234–35; *Dickter,* 465 A.2d at 2–3. Instantly, no such additional prejudicial factors are alleged.

We close by noting our recent holding in *Gordy,* which we find to be instructive and worthy of repetition here:

> The rights to a public trial and to a trial by a jury of a defendant's peers are among the most fundamental and obvious constitutional protections that all courts must join in protecting. *See* U.S. CONST. amend. VI; PA. CONST. art. I, § 9. Similarly, the United States and Pennsylvania Constitutions give defendants who are accused of crimes the right to confront witnesses. *Id.* The fac[t] that complainants in any particular case may have to testify and may have to endure the procedural steps of criminal prosecution (*e.g.* appearing for trial, being told the defendant has pled guilty, having to appear again if the defendant is properly allowed to withdraw the plea) do not constitute abuse by the legal system.

73 A.3d at 628.

\* \* \*

The Commonwealth has not established that it would be substantially prejudiced if Appellant were to withdraw his guilty plea. The trial court abused its discretion in denying Appellant's motion to withdraw his guilty plea. Accordingly, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

GANTMAN, J. concurs in the result of the majority.

MUNDY, J. files a Dissenting Opinion in which BENDER, P.J. and PANELLA, J. join.

### DISSENTING OPINION BY MUNDY, J.:

I respectfully dissent from the learned Majority's decision to vacate the judgment of sentence and remand this case for trial. In my view, the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea before sentencing.

As the Majority aptly notes, in Pennsylvania "[t]here is no absolute right to withdraw a guilty plea." *Commonwealth v. Unangst*, 71 A.3d 1017, 1020 (Pa.Super.2013) (citation omitted). "Nevertheless, prior to the imposition of sentence, a defendant should be permitted to withdraw his plea for any fair and just reason, provided there is no substantial prejudice to the Commonwealth." *Id.* (internal quotation marks and citation omitted). Additionally, it is axiomatic that "[a]n assertion of innocence can constitute a fair and just reason for plea withdrawal." *Commonwealth v. Gordy*, 73 A.3d 620, 624 (Pa.Super.2013).

In this case, Appellant made the following statements at sentencing in connection with his desire to withdraw his guilty plea.

I don't even know how to start this. It's a lot more to this than what people think, you know, and I took this plea even though I didn't want to take it and just to save [the victim] pain and suffering, you know. But when I sit here and I look at everything and I see [the victim's] family sit here and everybody in the world badgering me and constantly saying, oh this, that, you are the bad guy, you know, I was letting you know I will never get a fair trial here, and the reason why I took my plea as well. **But I know my story wouldn't stick and nobody here would believe my story either unless they had a polyester graph [sic] and lie detector, then maybe the truth would come to light.** And I want the [c]ourt to know that it wasn't on record, you know.

In 2002 I was locked up and an event occurred, and in this event the Antichrist came out of me. It may sound crazy, but what happened was the CIA came to me and tried to cover it up and I have been attacked several times ever since this event happened. It happened while the serpent was present by the boat. The Antichrist, he came out of me, and ever since then this has been happening I've been attacked. I'm not talking about just this event. They knew I was going to leave, you know, and then now I've got immigration I'm dealing with. They keep coming to me, giving me offers to go to China and stuff like that to assassinate the president over there, stuff like that. **And regardless, I know one thing for sure, they also gave me a polyester graph [sic], a lie detector test that would prove my innocence.**

But why am I going to fight a case if I've been framed by the system? How am I going to fight a case? There's nowhere to act. **I guarantee that if I have a polyester graph [sic] that everything, every word I said right now would not come out a lie, because I didn't commit this crime.**

. . .

I have proof, too, of my allegations. If a full investigation is done, my allegations, if my attorney is willing to do a full investigation, I guarantee I have some proof too. And for fair—if you all do decide to grant this withdrawal for a fair trial, I ask Your Honor if I can—because they sentence me like this is a capital case anyway, like I murdered

somebody. To prove my innocence, along with her investigation to my allegations to prove that, and if she's willing to hopefully. **If you could grant a polyester [sic] lie detector test too with that.**

. . .

I'm innocent. I got proof if there was an investigation done. **Guarantee you if you give me a lie detector [test] it would prove that. If not, you go ahead and give me life.** You give me life right now. It doesn't matter.

N.T., 11/30/10, at 122–124, 130, 133 (emphases added). The Majority concludes from this that Appellant unambiguously asserted his innocence which provided a fair and just reason to withdraw his guilty plea. Majority Opinion at 1128.

In *Commonwealth v. Walker*, 26 A.3d 525 (Pa.Super.2011), *appeal denied*, 615 Pa. 756, 40 A.3d 121 (2012), this Court was also faced with the trial court's denial of a pre-sentence motion to withdraw a guilty plea. In *Walker*, the defendant pled guilty but mentally ill to one count of aggravated harassment by a prisoner and two counts of aggravated assault. *Id.* at 526. However, prior to sentencing, Walker filed a motion to withdraw his plea. *Id.* at 527. The following exchange took place at the hearing.

[Appellant]: Good afternoon, Your Honor. I really do think that [the Commonwealth has] sufficient evidence to prove my innocence, and I have not been involved in any drugs or alcohol—and that I believe that the [Commonwealth] has a tape of a video camera to prove that I'm innocent.

[The Court]: Where do you have that basis from?

[Appellant]: Because on the unit that I'm housed on—that I'm housed in—one of these incidents that happened, there's cameras on this unit and they point directly to the officer's equipment, to have those cameras monitored, and the evidence would be on the camera.

. . .

[The Commonwealth]: It's my understanding, there is no videotape. We have no videotape in our file. In all of the documentation that we have, there is absolutely no mention of a video. And it's my understanding that even if there had been at the time, from 2005, being that we're now almost in 2008, I'm sure it has been taped over or has been recorded as is customary with surveillance.

*Id.* at 527–528 (brackets in original). The trial court denied Appellant's motion to withdraw his guilty plea, and this Court affirmed, concluding that Appellant had not shown a fair and just reason to withdraw his plea.

[A]s in [*Commonwealth v. Iseley*, 419 Pa.Super. 364, 615 A.2d 408 (1992), *appeal denied*, 534 Pa. 653, 627 A.2d 730 (1993)], here, Appellant offered "dubious grounds" for withdrawing his plea. At the hearing on his motion to withdraw, Appellant merely speculated that the Commonwealth possessed a videotape that would exonerate him. However, he was unable to produce the videotape or even describe what it would depict, other than evidence "to prove that [he's] innocent." N.T. Hearing, 10/17/07. **Not only was this basis for withdrawing his plea questionable, but we also conclude that it did not constitute a "clear" assertion of innocence.** At no point did Appellant expressly state that he did not commit the offense of aggravated assault. Accordingly, we conclude that the court did not abuse its discretion in determining that no "fair and just" reason existed to permit Appellant to withdraw his guilty but mentally ill plea.

*Id.* at 530–531 (emphasis added).

Similarly, in *Commonwealth v. Tennison*, 969 A.2d 572 (Pa.Super.2009), *appeal*

*denied,* 603 Pa. 681, 982 A.2d 510 (2009), the defendant pled guilty to one count of burglary and pled no contest to two additional burglary charges as well as one count of theft of an automobile. *Id.* at 573. However, in the presentence report, there was "an entry ... stating that Appellant would consider withdrawing his plea if his state sentence were to precede his federal sentence." *Id.* at 574. At the sentencing hearing, the following exchange took place.

[APPELLANT]: The only reason I was wondering about my plea, if I got sentenced today, it would effect [sic] my Federal sentencing and if that was to happen, yes.

. . .

THE COURT: Let's cut to the chase here. Mr. Tennison, do you want to withdraw your plea or don't you? If you do, I have to know why.

[APPELLANT]: It's a possibility, Your Honor.

THE COURT: What do you mean it's a possibility? Either you are or you aren't.

[APPELLANT]: There are still things that I am learning about my case as far as evidence and other things, that have really persuaded me to look at different things. I did take a plea agreement because of the sentencing issues and stuff like that, because it would have worked to my advantage, and I know that I'm not guilty or however I may want to approach it, then, you know, I would like to—

THE COURT: How do you want to approach it? That is what I want to know.

[APPELLANT]: As my assertion of not guilty.

. . .

THE COURT: I just want to understand the issue. If you can make—if you can resolve the Federal problem, then you're guilty to these charges. If you don't resolve the Federal problem, then you're going to say you are not guilty of these charges.

[DEFENSE COUNSEL]: That is not at all what I am saying, Judge, and I think that [sic] unfair to pose it in those terms.... What I am saying is that there would be no motion to vacate a guilty plea in the event that this issue is resolved before May 5th. That's really as far as I need to go, I think, at this time.

. . .

THE COURT: Any comment, counselor [addressed to the prosecutor].

[PROSECUTOR]: There has to be a fair and just reason, for instance the assertion of innocence. It sounds to me as though the only issue is ["]how good of a deal can I get["] as to whether or not he is going to plead guilty, which has nothing to do with guilt or innocence.

[DEFENSE COUNSEL]: I think it does. And as the Judge knows, there is [sic] a number of times when people enter guilty pleas for other reasons other than belief in their guilt, and they are valid reasons and they are accepted judicial reasons.

*Id.* at 574–575 (some brackets and emphasis in original). This Court concluded that the trial court properly held that Tennison had not shown a fair and just reason to warrant the withdrawal of his plea.[1]

---

1. As the Majority points out, in *Commonwealth v. Katonka,* 33 A.3d 44 (Pa.Super.2011) (*en banc*), this Court noted that the *Tennison* Court "limited its holding to the specific facts of that case." *Id.* at 48; *see also Tennison, supra* at 578. However, in *Katonka,* this Court nevertheless accepted *Tennison* 's legal

Dispositive in both [*Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973) ] and [*Commonwealth v. Randolph,* 553 Pa. 224, 718 A.2d 1242 (1998) ] was that the **defendant made a clear assertion of innocence prior to sentencing,** such that it qualified as a fair and just reason permitting the presentence withdrawal of the guilty plea. **In contrast, Appellant's conditional assertion of innocence—invoked at the prospect of being sentenced, withdrawn at the prospect of receiving yet another continuance—was anything but clear.** Indeed, no sooner would the assertion be made than it would be completely contradicted by statements admitting guilt should sentencing be deferred until resolution of the federal case. Defense counsel himself conceded at the hearing of May 10, 2005 that he doubted his ability to represent Appellant on the assertion of innocence at a later date if the court granted Appellant's requested motion for continuance.

*Id.* at 577–578 (emphases added).

I believe *Walker* and *Tennison* should guide our resolution of this case. As noted above, Appellant made no less than five requests for the trial court to order a polygraph examination. *See* N.T., 11/30/10, at 122–124, 130, 133. In my view, the record reveals that Appellant only wished to withdraw his guilty plea if he could undergo a polygraph examination and if a "full investigation" was conducted. *See id.* The Majority repeatedly emphasizes that Appellant used the words "I didn't commit this crime." *Id.* at 124; *see also* Majority Opinion at 1123, 1126. While I certainly agree that Appellant did say these words, that cannot be the end of

our inquiry. Rather than look at those five words in isolation, I would review the entire exchange, to understand them in proper context. In looking at all of Appellant's statements to the trial court, it becomes evident that Appellant only wanted to assert his innocence and withdraw his guilty plea if he could undergo such an examination. Our cases treat this as a conditional withdrawal of a guilty plea, which is not a fair and just reason to do so. *Compare Walker, supra* at 527 (the defendant stating "I believe that the [Commonwealth] has a tape of a video camera to prove that I'm innocent[ ]"), *with* N.T., 11/30/10, at 123 (Appellant stating, "I guarantee that if I have a polyester graph [*sic* ] that everything, every word I said right now would not come out a lie, because I didn't commit this crime[ ]"). In my view, there is no meaningful distinction between a lack of hypothetical videotape evidence and a lack of hypothetical polygraph evidence.

The Majority concludes, "Appellant's plea was not conditioned upon a polygraph test. Rather, Appellant maintained that such a test would verify his innocence." Majority Opinion at 1126 (internal citation omitted). In light of the entire record, I respectfully disagree, as the record forecloses that conclusion. I repeat the following excerpt of Appellant's statement, which in my view is the most telling of his intentions.

I'm innocent. I got proof if there was an investigation done. **Guarantee you if you give me a lie detector [test] it would prove that. If not, you go ahead and give me life.** You give me life right now. It doesn't matter.

proposition that a conditional assertion of innocence is not a fair and just reason to permit withdrawal of a guilty plea. *See Katonka, supra* at 49 (concluding, "[h]ere, unlike the circumstances in *Tennison,* Katonka specifi-

cally asserted that he was innocent of the crimes and **this assertion was neither contradictory nor conditioned on some other event[ ]**") (emphasis added).

N.T., 11/30/10, at 133 (emphasis added). This statement alone reveals that Appellant asserted his innocence only if the trial court would order a lie detector test. "If not," Appellant clearly wanted the trial court to impose sentence, which it did. *Id.* This is far from a "clear" assertion of innocence, as the Majority claims. *See* Majority Opinion at 1127. Based on all of these considerations, I conclude that Appellant did not provide a fair and just reason for the withdrawal of his guilty plea. *See Gordy, supra; Walker, supra; Tennison, supra.*

Based on the foregoing, I conclude that the trial court did not abuse its discretion when it denied Appellant's motion to withdraw his guilty plea. Accordingly, I would affirm the November 30, 2010 judgment of sentence. I respectfully dissent.