J-S78044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KIENAN WADE KENNEDY, | : | |
| | : | |
| Appellant | : | No. 428 MDA 2014 |

Appeal from the Judgment of Sentence entered on September 27, 2013
in the Court of Common Pleas of Lebanon County,
Criminal Division, No. CP-38-CR-0001235-2012

BEFORE: GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 23, 2015**

Kienan Wade Kennedy ("Kennedy") appeals from the judgment of sentence entered following his conviction of rape, indecent assault and endangering the welfare of a child.[1] We affirm.

In its Opinion, the trial court summarized the relevant history underlying the instant appeal, which we incorporate herein by reference. **See** Trial Court Opinion, 4/29/14, at 2-4.

Briefly, on September 12, 2012, the Commonwealth charged Kennedy with one count each of rape of a child, indecent assault, endangering the welfare of children and corruption of minors.[2] On December 19, 2012, the date scheduled for a hearing on Kennedy's Omnibus Pretrial Motion, the Commonwealth offered a plea deal whereby Kennedy would plead guilty to

_____

[1] 18 Pa.C.S.A. §§ 3121, 3126, 4304.

[2] 18 Pa.C.S.A. §§ 3121, 3126, 4304, 6301.

one count each of rape of a child, indecent assault and endangering the welfare of children, and receive a sentence of 10 to 20 years in prison. The Commonwealth represented that the plea deal was available only that day. Kennedy accepted the Commonwealth's offer, tendering a guilty plea on that date.

On March 12, 2013, prior to sentencing, Kennedy filed a Petition to Withdraw Guilty Plea. Kennedy asserted that he was innocent and wished to proceed to trial. The trial court issued a Rule to Show Cause why Kennedy's Petition should not be granted. The Commonwealth filed a response, stating that it suffer substantial prejudice should the matter proceed to trial. After a hearing, the trial court denied Kennedy's Petition. On September 27, 2013, the trial court sentenced Kennedy to 10 to twenty years in prison. Kennedy filed a post-sentence Motion to withdraw his guilty plea. The trial court denied Kennedy's Motion, after which Kennedy timely filed a Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

Kennedy now presents the following claims for our review:

I.    Did the [trial c]ourt err in denying [Kennedy's] request to withdraw his guilty plea where the request was made prior to the imposition of sentence, [Kennedy] presented a fair and just reason for the withdrawal of the plea, and the Commonwealth would not have been substantially prejudiced by the withdrawal?

II.   Was [Kennedy's] guilty plea not knowingly, intelligently, and voluntarily entered where [Kennedy] was not given sufficient time to consider the amended plea that was offered on December 19, 2012, and the Commonwealth placed excessive pressure to induce [Kennedy] into

- 2 -

pleading guilty by threatening to withdraw the amended plea [offer] if [Kennedy] did not both withdraw his pretrial motion and plead guilty to the amended plea on December 19, 2012?

Brief for Appellant at 4.

Kennedy first claims that the trial court improperly denied his Petition to withdraw his guilty plea. *Id.* at 10. In support, Kennedy argues that (a) his claim of innocence constituted a fair and just reason to support withdrawal of the plea; and (b) the Commonwealth's desire to shield the victim "from the emotional discomfort of testifying at a trial was is not substantial prejudice." *Id.* at 11-12. Kennedy points out that the victim testified at the preliminary hearing, and was subject to cross-examination. *Id.* at 12. Kennedy further contends that the difficulty in transporting the victim from New York to Pennsylvania existed prior to his guilty plea. *Id.* Therefore, Kennedy argues that the withdrawal of his guilty plea would place the Commonwealth in the same position as it was prior to his plea. *Id.*

As this Court has recognized, "[a]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct *sua sponte*, the withdrawal of a plea of guilty … and the substitution of a plea of not guilty." *Commonwealth v. Prendes*, 97 A.3d 337, 354 (Pa. Super. 2014) (citations omitted). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made [b]efore sentencing ... should be liberally allowed." *Id.* at 351 (citation omitted). In his Petition to Withdraw Guilty

Plea, Kennedy asserted that he is innocent of the charges. Petition to Withdraw Guilty Plea, 3/12/13, at ¶ 3. This Court has recognized that "the mere articulation of innocence [is] 'a fair and just' reason for the pre-sentence withdrawal of a guilty plea[,] unless the Commonwealth has demonstrated that it would be substantially prejudiced." **Commonwealth v. Katonka**, 33 A.3d 44, 46 (Pa. Super. 2011) (*en banc*). An abuse of discretion exists when a defendant has shown a "fair and just" reason for withdrawing his plea, absent "substantial prejudice" to the Commonwealth. **Commonwealth v. Elia**, 83 A.3d 254, 261 (Pa. Super. 2013).

In its Opinion, the trial court credited the Commonwealth's evidence of the substantial prejudice it would suffer should Kennedy withdraw his guilty plea. Trial Court Opinion, 4/29/14, at 5. The record supports the trial court's findings, and its legal conclusions are sound. Accordingly, we affirm on the basis of the trial court's Opinion with regard to Kennedy's claim. **See id.** at 4-5. We additionally observe the following.

At the hearing on Kennedy's Petition, Elizabeth Siracuse ("Ms. Siracuse"), the victim's clinical social worker, testified by telephone as to the victim's response to questioning about the incidents involving Kennedy. N.T., 5/15/13, at 9-10. Of particular note, Ms. Siracuse testified as to the victim's regression during treatment, when asked about the incidents:

> So, as I am sitting across from [the victim], I said to her, of course [the trial court is] going to want to know what happened. Can you go back and share what happened?

[The victim] started to share—you could see her eyes were vacant and she started to speak in a more robotic fashion. I asked her about before [the incidents]. Did she feel comfortable with [Kennedy]? And she did not answer. Then she talked about the transition.

As she did so, you just saw here withdraw into herself. She talked about the first time he was inappropriate. A big tear came from her eye. That would be the end of her being able to talk about this. She pushed back in her seat and she looked down. She was disconnected. She started quietly to cry. I reminded her [that] she was safe and that I was with her and he couldn't harm her. I was reassuring her. Clearly she was not with me then.

She just began to sob uncontrollably. I knew her mom was in the building for a meeting elsewhere. I decided it was important for her mom to be here.

I called the caseworker who got the mom. The mom came upstairs. [The victim] was sobbing. Her mom came upstairs and came into the room and sat in the seat….

[The victim] was 13 and … crawled into her mother's arms like a baby and put her head in her mom's neck, wrapped her arms around her and sobbed like a small child. Her mom just told her [*sic*] and said it was going to be okay.

That is how our session ended…. The following week, I met with [the victim] again.

She came in. She was resilient [*sic*]—very upset, not going to do it. I decided that I didn't think it was clinically safe for me to broach her history at that point. I think she needed space and distance to feel she had permission to say no.

I was told[,] in reading the records that came from both Pennsylvania and here [in New York State, that] this is something that went on for probably half of the child's life. This started when she was five or six. She was told when it finally was stopped and the police were brought in. More than half of this child's life she was victimized and made to do things that are unspeakable.

It's my feeling as a clinical social worker that forcing her to testify at this moment would not be in her best interest, and could actually really be to her detriment.

*Id.* at 9-11. When asked if she thought that the victim would be able to verbalize in court what had taken place, Ms. Siracuse responded as follows:

No. I absolutely don't. If [the victim] could not do that in my office with a therapist she very much likes and feels safe with and enjoys and trusts, if she could not do that there, I don't see how she's going to be able to do that in a courtroom facing her perpetrator. I don't think she has the coping skills right now.

**I think I'm watching her regress as a further regression**. I don't think she can do what you need her to do right now.

*Id.* at 11-12 (emphasis added).

For the reasons stated by the trial court, and supported by the Commonwealth's witnesses at the hearing, including the testimony of Ms. Siracuse, we discern no abuse of discretion by the trial court in denying Kennedy's Petition to Withdraw his guilty plea. Accordingly, we cannot grant Kennedy relief on his first claim.

In his second claim, Kennedy asserts that the trial court improperly denied his post-sentence Motion to withdraw his guilty plea. Brief for Appellant at 13. Kennedy claims that his guilty plea was not voluntarily entered, "because he was placed under excessive pressure when the Commonwealth would not give him sufficient time to consider an amended plea." *Id.*

- 6 -

In its Opinion, the trial court addressed Kennedy's claim and concluded that it is without merit. **See** Trial Court Opinion, 4/29/14, at 5-6. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis. **See id.**

Judgment of Sentence affirmed.

Gantman, P.J., joins the memorandum.

Jenkins, J., files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2015

IN THE COURT OF COMMON PLEAS
OF LEBANON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

    v.

KIENAN KENNEDY,
Defendant

:
:
:
:
:
:
:
:
:
:
:

No. CP-38-CR-1235-2012

OPINION BY JONES, JR., J.:

Defendant has appealed this Court's Order of February 6, 2014 denying his Post-Sentence Motions.

FACTUAL AND PROCEDURAL HISTORY

On September 12, 2012, a criminal information was filed against Kienan Kennedy (hereinafter "Defendant") charging him with one (1) count of Rape of a Child (F1), one (1) count of Indecent Assault, one (1) count of Endangering the Welfare of Children (F3) and one count of Corruption of Minors (F3).[1] On August 30, 2012, a preliminary hearing was held and the charges were bound over. On August 30, 2012, the minor victim[2] (hereinafter "D.N.") was present and testified at the preliminary hearing. On November 16, 2012, Defendant filed an Omnibus Pretrial Motion to Suppress Evidence. A pretrial hearing was scheduled for December 19, 2012.

---

[1] Count 1 18 Pa.C.S.A. § 3121(c); Count 2 18 Pa.C.S.A. §3126(a)(7); Count 3 18 Pa.C.S.A. §4304(a)(1); Count 4 18 Pa.C.S.A. 6301(a)(1)(ii)

[2] Minor victim was twelve (12) years of age when the offenses occurred.

2

When Defendant arrived for the pretrial hearing, the Commonwealth offered him an amended plea of ten (10) years to twenty (20) years in a state correctional facility. To accept the plea, Defendant had to withdraw his pretrial motion and plead guilty on December 19, 2012. The Commonwealth told the Defendant and the Court that the offer was only good for that day. The Court recessed so that Defendant could confer with counsel. Defendant pleaded guilty on December 19, 2012.

On March 12, 2013, Defendant filed a Motion to Withdraw Guilty Plea. On March 19, 2013, the Commonwealth filed a response arguing that the Motion should be denied because D.N. was in foster care in the State of New York, and the Commonwealth was unable to force the State of New York to transport D.N. to Pennsylvania for trial.[3] On May 15, 2013, a hearing was held before this Court on Defendant's Motion to Withdraw Guilty Plea. The Commonwealth presented testimony via telephone from Elizabeth Siracuse, D.N.'s psychotherapist, and Debbie Thomas, a representative from D.N.'s foster care agency. Following the hearing, the Court denied Defendant's Motion to Withdraw Guilty Plea.

On September 27, 2013, a Megan's Law hearing was held where the Court found Defendant should be classified as a sexually violent predator. Immediately following the hearing, Defendant was sentenced to ten (10) years to twenty (20) years in a state correctional institution. On October 7, 2013, Defendant filed a timely Post-Sentence Motion. Both parties filed briefs in support of their respective positions. On February 6, 2014, Defendant's Post-Sentence Motion was denied by this Court.

Defendant appealed to the Superior Court on March 3, 2014. On March 24, 2014, Defendant filed a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Defendant alleges that: (1) this Court erred in

---

[3] D.N. was thirteen (13) years old at the time of the Hearing on Defendant's Motion to Withdraw Guilty Plea.

3

denying Defendant's request to withdraw his guilty plea and (2) Defendant's guilty plea was not knowingly, intelligently, and voluntarily entered.

## DISCUSSION

"Prior to the imposition of sentence, a defendant should be permitted to withdraw his plea 'for any fair and just reason.'" **Commonwealth v. Kirsch**, 930 A.2d 1282, 1284-85 (Pa.Super. 2007), citing **Commonwealth v. Forbes**, 450 Pa. 185, 191 (1973); see also **Pa. R. Crim. P. 591(A)**. A fair and just reason would entitle a defendant to withdraw a plea of guilty unless substantial prejudice would inure to the Commonwealth upon the granting of the motion. **Kirsch**, 930 A.2d at 1285; **Forbes**, 450 Pa. at 191. Prejudice requires a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled. **Commonwealth v. Carrasquilla**, 78 A.3d 1120, 1129 (Pa. Super. 2013), citing **Kirsch**, 930 A.2d at 1286. "Thus, prejudice is about the Commonwealth's ability to try its case, not about the personal inconvenience to complainants unless that inconvenience somehow impairs the Commonwealth's prosecution." **Commonwealth v. Gordy**, 73 A.3d 620, 624 (Pa.Super. 2013).

When Defendant requested to withdraw his guilty plea on March 12, 2013, the victim was in foster care and undergoing weekly counseling under the care of the New York Social Services. On May 15, 2013, a hearing was held on Defendant's request to withdraw his guilty plea. At that time, the Commonwealth asserted that it would be highly unlikely that they would be able to have the victim present at trial. If D.N. was returned to her mother's care, the Commonwealth would need to rely on the mother to transport the minor child. The Commonwealth stated that given the mother's past behaviors, this would be problematic. If D.N. remained in foster care, New York Social Services would not commit to transporting D.N. to Lebanon

4

County for a trial. If the Social Services believed appearing at the trial would cause D.N. harm, they had a responsibility not to subject her to that.

Commonwealth presented evidence through the testimony of Ms. Siracuse and Ms. Thomas.[4] Ms. Siracuse testified that, as D.N.'s psychotherapist, she had been seeing the victim on a weekly basis since December of 2013, following the Defendant's guilty plea. When Ms. Siracuse learned D.N. may have to testify at a trial, she spoke to D.N. at one of their sessions. Ms. Siracuse testified that in her opinion, she was not positive that D.N. could make it through a trial. When Ms. Siracuse brought up the subject with D.N., D.N. became withdrawn and had a vacant look in her eyes. (N.T. at 8). She also began sobbing. Ms. Siracuse testified that, in her opinion, forcing D.N. to testify would not be in her best interest, and would likely be to her detriment. Ms. Siracuse testified that D.N. was a long way from being emotionally stable enough to handle the burden of the trial.

The Court put great weigh to the Commonwealth's argument that the victim could not be made available for trial. The Court found that the Commonwealth would suffer substantial prejudice if the Defendant was allowed to withdraw his guilty plea. Therefore, the Court did not abuse its discretion when it denied Defendant's Motion to Withdraw Guilty Plea.

Defendant also alleges that his guilty plea was not knowingly, intelligently, and voluntarily entered because he was not given sufficient time to consider the amended plea and that the Commonwealth placed excessive pressure on Defendant to induce him to accept the amended plea. Defendant alleges that Commonwealth placed undue pressure on him by threatening to withdraw the plea if Defendant did not withdraw his pretrial motion and plead guilty that same day. We do not find Defendant's argument to be credible.

---

[4] Both witnesses testified via telephone.

The Commonwealth presented the amended plea to Defendant's counsel around lunchtime the day of the pretrial hearing. Defendant's counsel communicated the amended plea to the Defendant. Before the scheduled pretrial hearing, Defendant was given at least ten (10) minutes to speak with his attorney and with his Mother, who was present in the courtroom. After consulting with his attorney and his mother, Defendant accepted the plea. According to the transcript, the Court recessed at 2:32 p.m. to allow Defendant time to consider the plea. Court was called back into session at 3:39 p.m. after Defendant had decided to plead guilty and filled out the guilty plea colloquy.

The court may not accept a plea of guilty unless it finds from proceedings in open court at the time the plea is proffered that the defendant understands the nature of the charges against him and the consequences of his plea. **See Pa.R.Crim.P. 590.** At Defendant's guilty plea hearing, the Court reviewed the guilty plea colloquy with Defendant. Defendant's counsel read the entire form to Defendant because he did not read very well. (N.T. at 7). The Court repeated the charges and asked Defendant if he understood the charges; Defendant replied in the affirmative. (N.T at 8). When the Court asked the Defendant if he was pleading guilty because he committed the offenses, Defendant replied yes. (N.T. at 8).

The Court further questioned if Defendant had enough time to review the guilty plea; the Defendant replied in the affirmative. (N.T. at 9-10). When asked in the written colloquy if he had been pressured or coerced into making the plea, Defendant replied in the negative. At the end of the Court's questions, Defendant was asked by the Court if he still wished to enter a plea of guilty; Defendant replied yes, again. For the above reasons, we find that the Defendant knowingly, intelligently and voluntarily entered into the amended plea.

6

## CONCLUSION

For the reasons set forth above, this Court's Order of February 6, 2014 is hereby affirmed.