J-S09018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAWRENCE LEHEW, | |
| Appellant | No. 1008 WDA 2014 |

Appeal from the PCRA Order May 19, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0002436-2009, CP-02-CR-0013790-2009

BEFORE:  FORD ELLIOTT, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:  **FILED MARCH 18, 2015**

Lawrence Lehew appeals from the May 19, 2014 order denying his PCRA petition.  We affirm.

On May 20, 2010, Appellant pled guilty but mentally ill at two criminal actions.  At number 2009-2436, the plea was entered as to charges of involuntary deviate sexual intercourse ("IDSI") of a child and corruption of a minor based upon a November 2, 2008 event involving a two-year-old male.  At number 2009-13790, Appellant entered the plea to charges of rape of a child, IDSI, sexual assault, and corruption of a minor for conduct occurring June 2008 through November 2008.  In the latter case, the victim was a six-year-old girl.  In return for the guilty plea, Appellant was to receive a negotiated sentence of ten to forty years imprisonment.

The trial court ordered an assessment to determine if Appellant was a sexually violent predator ("SVP").  On October 20, 2010, Appellant filed a

petition to withdraw his guilty plea. The SVP hearing was conducted on October 27, 2010. The record indicates that, as a result of the motion to withdraw, there were further negotiations concerning Appellant's sentence. On October 27, 2010, Appellant tendered a plea of *nolo contendere* to the same charges outlined above. In exchange, he was to receive a negotiated sentence of ten to thirty years in jail.

The factual basis for Appellant's plea follows. During the period of his criminal activities, June 2008 through November 2008, Appellant was staying at the home of a friend, Ron, who lived in Pittsburgh. On November 2, 2008, Appellant and Ron were drinking when Appellant went to the basement, where Ron's two-year-old grandson was alone. Shortly thereafter, Ron followed Appellant downstairs and caught Appellant performing oral sex on the child. Ron yelled at Appellant, who apologized and said that there was something wrong with him. On November 4, 2008, Appellant was arrested on a parole violation. During the booking process, Appellant said that he had been caught performing oral sex on a two-year-old boy. Police called Ron, who acknowledged that he was aware of the assault and that it happened in his house. Appellant was then formally interviewed by police, and he reiterated that he had performed IDSI on the toddler.

Ron also had a six-year-old granddaughter residing in his home. On August 18, 2009, she was interviewed at the Children's Advocacy Center located at Children's Hospital in Pittsburgh. She told the interviewer that

she understood the difference between the truth and a lie as well as fact from fiction. The six-year-old victim reported that she "was sleeping at night and the defendant would come into her room and take her downstairs in the living room and put her on the long couch[.]" N.T., 10/27/10, at 9. The victim continued that Appellant would then "touch her front private. [The victim] explained that she meant her vagina by that private." *Id*. The interviewer asked the victim what Appellant used to touch her vagina, and the victim responded that Appellant "put his private inside of my private." *Id*. The victim also said that "defendant put his mouth on her privates and put his fingers inside her front private." *Id*.

After Appellant tendered his *nolo contendere* plea, Dr. Cathy L. Clover testified at the October 27, 2010 proceeding. She was a psychologist appointed by the Sexual Offender Assessment Board ("SOAB") to perform Megan's Law evaluations. She opined that Appellant suffered from pedophilia and met the definition of an SVP. In rendering her opinion, Dr. Clover relied, in part, upon statements that Appellant made to his probation officer "that he had been previously involved in sexual behavior with his own children." *Id*. at 14.

On November 17, 2010, the court imposed a negotiated sentence of ten to thirty years, and, at that time, Appellant withdrew the October 20, 2010 motion to withdraw the plea of guilty but mentally ill. **See** N.T., Sentencing, 11/17/10, at 2. After Appellant was adjudicated an SVP, he filed a direct appeal. We affirmed the judgment of sentence on August 21,

2012, and our Supreme Court denied review on March 13, 2013. *Commonwealth v. Lehew*, 60 A.3d 578 (Pa.Super. 2012), *appeal denied*, 63 A.3d 775 (Pa. 2013). On appeal, we rejected Appellant's claim that the trial court erred in determining that Appellant was an SVP "where the basis of the determination turned on hearsay, there was no clear and convincing evidence that he met the statutory factors, exhibited predatory or violent behavior, is likely to reoffend, or suffered from a mental abnormality?" *Id*. (unpublished memorandum at 3).

On January 10, 2014, Appellant filed a *pro se* PCRA petition averring that prior counsel should have filed a motion to suppress his statement to his probation officer because he made it while he was intoxicated on drugs and alcohol. Appellant also averred that his *nolo contendere* plea was unknowing and involuntarily entered since he was under the influence of drugs administered to alleviate his psychological problems and since he did not understand the plea proceedings due to his mental condition. Finally, he averred ineffective assistance of plea counsel for failing to file an appeal. Robert S. Carey, Jr., Esquire, was appointed, and Mr. Carey then filed a no-merit letter and petition to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

Mr. Carey noted that the issue concerning reliance on Appellant's statements to his probation officer during the SVP hearing was addressed and rejected on direct appeal and that prior counsel had filed a direct

appeal, where claims of ineffective assistance of counsel could not be raised. Mr. Carey further outlined that the record and Appellant's representations during the *nolo contendere* plea colloquy contradicted Appellant's averments that his medications and mental condition prevented him from tendering a knowing and voluntary *nolo contendere* plea.

On April 25, 2014, the PCRA court issued notice of its intent to dismiss the PCRA petition without a hearing, as required by Pa.R.Crim.P. 907. It indicated that its independent review confirmed that the issues raised in the PCRA petition were meritless and outlined the rationale for that conclusion. The PCRA court then granted Mr. Carey's petition to withdraw.

Appellant responded to the court's intent to dismiss the PCRA petition without a hearing. He argued that Mr. Carey conducted inadequate review of this matter since he did not obtain Appellant's mental health records, which Appellant maintained would have proven that he was incapable of entering a knowing and voluntary plea due to his mental condition and his ingestion of psychotropic medication. Appellant also claimed that his plea was "coerced out of fear" and that he did not "understand what was going on." Answer to Notice, 5/13/14, at 1. Finally, he requested an evidentiary hearing.

The court then dismissed the PCRA petition on May 19, 2014, and, in that order, indicated that the "defendant is not entitled to have appointed counsel represent him in this matter." Order of Court, 5/19/14, at 1. Despite this correct recitation of the law applicable to appointment of

counsel, the PCRA court, in response to Appellant's *pro se* notice of appeal, appointed Timothy J. Lyon, Esquire, for purposes of litigating this appeal. It did not order the filing of a Pa.R.A.P. 1925(b) statement. Mr. Lyon filed an advocate's brief raising the following issue on appeal:

> I. Whether remand for further fact finding and possibly an evidentiary hearing is required where the PCRA court erred in denying [Appellant's] *pro se* PCRA petition, which raised a potentially meritorious issue, after (i) receiving PCRA counsel's inadequate "no merit" letter and (ii) failing to sufficiently review the record itself.

Appellant's brief at 4.

Initially, we observe that the allegations on appeal are that Mr. Carey conducted an inadequate review regarding Appellant's cognitive ability to enter a knowing plea and that Appellant is entitled to a hearing. Both issues were presented in Appellant's *pro se* response to the Pa.R.Crim.P. 907 notice and therefore are preserved. ***Commonwealth v. Rykard***, 55 A.3d 1177 (Pa.Super. 2012). For purposes of appellate review, we "determine whether the PCRA court's rulings are supported by the record and are free of legal error. . . . If supported by the record, the PCRA court's credibility determinations and factual findings are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Bardo***, 105 A.3d 678, 685 (Pa. 2014).[1] Appellant's

_____

[1] The aspects of ***Bardo*** outlining the standard of review and ineffective-assistance-of-counsel test commanded a majority of our Supreme Court.

averment thus is that his plea was unknowing and involuntary due to plea counsel's ineffectiveness in failing to recognize Appellant's lack of capacity to enter a *nolo contendere* plea, and that Mr. Carey conducted an inadequate review of Appellant's mental health records.

> Counsel is presumed effective, and the petitioner bears the burden of proving otherwise. **Commonwealth v. Roney**, ––– Pa. ––––, 79 A.3d 595, 604 (2013). To prevail on an ineffectiveness claim, the petitioner must plead and prove, by a preponderance of the evidence, the Sixth Amendment performance and prejudice standard set forth in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has divided the performance component of *Strickland* into two sub-parts dealing with arguable merit and reasonable strategy. **Commonwealth v. Baumhammers**, ––– Pa. ––––, 92 A.3d 708, 719 (2014). Thus, to prevail on an ineffectiveness claim, the petitioner must show: that the underlying legal claim has arguable merit; that counsel had no reasonable basis for his or her action or omission; and that the petitioner suffered prejudice as a result. *Id.* (citing **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975–76 (1987)).

*Id*. at 684. There are additional standards applicable when a lawyer's ineffectiveness relates to entry of a defendant's guilty plea.[2] Specifically, allegations of

> ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice

---

[2] "It is well established that a plea of *nolo contendere* is treated as a guilty plea in terms of its effect upon a given case." **Commonwealth v. Lippert**, 85 A.3d 1095, 1100 n3. (Pa.Super. 2014).

was within the range of competence demanded of attorneys in criminal cases.

Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa.Super. 2014).

In maintaining that he lacked the mental capacity to enter a knowing and voluntary guilty plea, Appellant relies upon the following facts: 1) on November 25, 2009, he was declared severely mentally disabled; 2) he was committed to Torrance State Hospital for seven months; and 3) he originally tendered a plea of guilty but mentally ill.[3] He claims that PCRA counsel conducted an inadequate review of his mental capacity to enter the October 27, 2010 plea in that counsel did not obtain any of his medical records. We

_____

[3] Appellant suggests that the May 20, 2010 plea of guilty but mentally ill was withdrawn based upon the fact that it was unknowingly and involuntarily entered. The record belies this suggestion. The discussion at the October 27, 2010 proceeding indicates the following. After entry of the plea of guilty but mentally ill and while he was being assessed by the SOAB, Appellant filed a pre-sentence motion to withdraw the plea. There were further negotiations, and the Commonwealth agreed to reduce the maximum negotiated sentence in exchange for tender of a *nolo contendere* plea to the same charges. Before there was any ruling on it by the trial court, Appellant withdrew the motion regarding the May 20, 2010 plea, and there was no determination that he lacked the mental capacity to enter it. We note that, since the motion to withdraw was filed before sentencing, the prevailing case law virtually compelled that it be granted. ***See Commonwealth v. Carrasquillo***, 78 A.3d 1120 (Pa.Super. 2013) (*en banc*), *appeal granted*, 86 A.3d 830 (Pa. 2014); ***Commonwealth v. Gordy***, 73 A.3d 620 (Pa.Super. 2013); ***Commonwealth v. Unangst***, 71 A.3d 1017 (Pa.Super. 2013).

concur with the PCRA court's factual assessment that there is no genuine issue of material fact in that the record demonstrates that Appellant entered a knowing and voluntary *nolo contendere* plea, that he had the mental acuity to enter that plea, and that he was not under the influence of drugs that affected his ability to tender a knowing and voluntary plea.

Appellant was committed to Torrance State Hospital ("Torrance") for sixty days on October 1, 2009. On November 25, 2009, the commitment was continued for another ninety days. Order of Court, 11/25/09, at 9. Appellant was released from Torrance in May 2010. N.T. Guilty Plea, 5/20/10, at 9. Appellant did not enter the plea at issue until October 27, 2010, five months after his release from Torrance.

The same judge who ordered Appellant's October 1, 2009 commitment presided on May 20, 2010, when the guilty but mentally ill plea was tendered, as well as on October 27, 2010, when the plea now challenged on appeal was entered. Additionally, Appellant's counsel, Michelle Collins, Esquire, entered her appearance on September 2, 2009. She was aware of the incompetency determination and of Appellant's diagnoses. ***Id***. Ms. Collins represented Appellant during the contested *no lo contendere* plea. N.T., 10/27/10, at 1.

Our review of the October 27, 2010 transcript establishes the following. Appellant understood the nature of the proceedings and was not under the influence of drugs that affected his ability to understand. At the inception of the proceedings, the plea court asked Appellant, "Are you

clearheaded today?" N.T., 10/27/10, at 4. Appellant responded, "Yes, I am." *Id.* Appellant also responded affirmatively when asked if he was aware of his negotiated sentence and was satisfied with counsel's representation.

Next, the court inquired, "Other than what [Appellant's counsel] renegotiated on your behalf, sir, which you just heard stated in open court by [the assistant district attorney] and confirmed by [Appellant's counsel], has anybody threatened or promised you anything to plead guilty?" *Id*. at 5. Appellant stated, "No, Your Honor." *Id*. When the court again queried, "No one is threatening or promising you, other than what you say on the record, to plead no contest?" *Id*. Appellant appropriately said, "Correct." *Id*.

Appellant then was asked whether he read and understood the written plea colloquy regarding entry of the *nolo contendere* plea. He nodded, was told to answer verbally, and did so with a "Yes." *Id*. Appellant reported that he understood each question on the form and answered each one honestly. In that aspect of the colloquy, Appellant stated that, by pleading *nolo contendere*, he understood he was giving up the right to present a defense, which could include "mental infirmity, or insanity." *Nolo Contendere* Explanation of Defendant's Rights, 10/27/10, at ¶ 26. He responded affirmatively when asked if he had "discussed with your attorney why these defenses are not available in your case?" *Id*. On that form, Appellant represented that no one forced him to enter the plea and that he was doing

it of his own free will. *Id*. at ¶¶ 53, 54. Finally, Appellant answered negatively when asked if he was "presently taking any medication which might affect your thinking or your free will?" *Id*. at 65.

At the oral colloquy, Appellant was questioned about whether defense counsel was "available in the event you ha[d] any questions." N.T., 10/27/10, at 6. Appellant appropriately and cogently answered, "Always available to me." *Id.* Appellant indicated his satisfaction with her representation. Appellant's counsel was asked whether she believed that Appellant understood the elements of the crimes, the penalties that could be imposed individually and collectively, and whether Appellant was "otherwise making a knowing, intelligent, and voluntary informed decision to plead no contest?" *Id.* at 7. Counsel responded, "I do." *Id*. Counsel also represented that she had discussed with Appellant the legal meaning of the particulars of entry of the *nolo contendere* plea in simple English.

The plea court then asked counsel, not Appellant, whether she thought Appellant understood matters. Appellant jumped in and said, "I do" and then said, "Yes," when the court asked if his answer was accurate. *Id*. at 7. The factual basis for the plea was entered on the record, and plea counsel said that she had no corrections to the summarized evidence against Appellant. At that point, the plea court asked Appellant whether he was entering the guilty plea since he was not "disputing the evidence the Commonwealth would have against you or its legal sufficiency." *Id*. at 10. Appellant answered, "That's correct, Your Honor." *Id*. at 10.

We have observed: "Competence to plead guilty requires a finding that the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him." ***Commonwealth v. Willis***, 68 A.3d 997, 1002 (Pa.Super. 2013). Appellant's responses as well as those of plea counsel establish unequivocally that, after his treatment at a state hospital for a mental disability, Appellant was able to understand the crimes, cooperate with counsel in forming a reasonable defense, and had a rational and factual understanding of the proceedings against him. His answers to all questions were appropriate and revealed that he understood the proceedings.

Plea counsel, knowing of Appellant's treatment, confirmed that Appellant was able to tender a knowing and understanding plea. The plea court, which was aware of Appellant's mental health history, assiduously ascertained that Appellant had indeed regained his competency. Appellant also entered a plea of guilty but mentally ill, then asked to withdraw it prior to sentencing. He was able to negotiate a better sentence as a result of his pre-sentence withdrawal request. These activities also demonstrated that Appellant was able to cooperate with counsel in defending this case.

Any mental health records from Torrance would have related to Appellant's mental state before he regained competency. Indeed, the very fact that Appellant was discharged from Torrance demonstrates that he regained his competency. Thus, the records from his mental treatment at

Torrance were not pertinent to his mental state when he entered his plea, and PCRA counsel was not ineffective for failing to review them. Appellant also avers he was under the influence of psychotropic drugs that interfered with his ability to understand the October 27, 2010 proceeding. That averment is refuted by Appellant's representations at the *no lo contendere* plea that the drugs, which he admittedly was taking, did not affect his mental ability to comprehend the proceedings. It likewise is contradicted by Appellant's cogent and appropriate response to each question posed on October 27, 2010.

It is a general principle of law in this Commonwealth that, when a defendant makes statements at a plea colloquy, the defendant is bound by those statements. **Commonwealth v. Timchak**, 69 A.3d 765, 774 (Pa.Super. 2013). Appellant represented that he was competent, understood the proceedings, and answered the written colloquy truthfully. In that written colloquy, Appellant indicated that he was not taking medicine that would affect his understanding and that he was entering the plea of his own free will. Appellant stated at the plea colloquy that he was tendering a *nolo contendere* plea due to the sufficiency of the Commonwealth's proof that he committed the offenses in question.

Every answer that Appellant proffered at the plea colloquy supported his representations regarding his ability to understand the information disseminated to him during the plea process and his competency when the *no lo contendere* plea was entered. We thus concur with Mr. Carey and the

- 13 -

PCRA court that, after a review of the record, there is no genuine issue of material fact that Appellant's mental condition and medicines did not compromise the knowing and intelligent nature of the *nolo contendere* plea and that Appellant was competent to enter that plea.

In seeking an evidentiary hearing, Appellant relies upon **Commonwealth v. Turetsky**, 925 A.2d 876 (Pa.Super. 2007). Therein, the defendant was denied PCRA relief without a hearing. He pled guilty to various sex offenses and contended in his PCRA petition that plea counsel rendered ineffective assistance in failing to explore whether he was competent to enter the plea. The defendant's PCRA petition revealed that plea counsel knew that the defendant was receiving psychological counseling and treatment, was under prescription medication for those issues, was a suicide risk, and was considered disabled. The defendant averred that counsel never investigated the information about his mental disabilities and medicines and did not tell the plea court about them. Counsel also permitted the defendant to give false answers on his written plea colloquy, and those answers indicated that the defendant was not under mental health treatment and had not taken any medication during the preceding week.

We concluded that the records submitted by the defendant with his PCRA petition created a genuine issue of fact as to the defendant's competence to enter the plea, and we remanded for an evidentiary hearing. We also held that the defendant was not bound by the answers in his written

plea colloquy since the answers were demonstrably false, a fact that was acknowledged by the PCRA court.

The present case bears no resemblance to **Turetsky**. The plea court was well aware of Appellant's mental issues. Appellant had been treated and released from Torrance five months before he tendered his *no lo contendere* plea. The answers to the written guilty plea colloquy were not demonstrably false. Appellant was asked whether any medications he was currently taking affected his ability to comprehend the proceeding rather than if he had taken medication at all.

The plea court was careful to ensure that Appellant was competent and capable of understanding the proceedings. It specifically asked counsel at the plea proceeding regarding the matter and plea counsel indicated that Appellant was competent. Appellant's responses at the plea proceeding confirmed counsel's competency assessment, and the record unequivocally establishes that Appellant understood the crimes of which he was accused, was capable of rationally consulting with his lawyers about defenses, and had rational and factual understanding of the proceedings against him.

Given this assessment, it is clear that Appellant was not entitled to an evidentiary hearing. Pa.R.Crim.P. 907(2), provides, "[a] petition for post-conviction collateral relief may be granted without a hearing when the petition and answer show that there is no genuine issue concerning any material fact and that the defendant is entitled to relief as a matter of law."

We have thus observed that "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Springer**, 961 A.2d 1262, 1264 (Pa.Super. 2008) (citation omitted). As the record supports the PCRA court's conclusion that there is no genuine issue of material fact as to the knowing and voluntary nature of Appellant's *nolo contendere* plea, we affirm its denial of the PCRA petition without a hearing.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2015

- 16 -