J-S14018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGEL RIVERA, | |
| Appellant | No. 1152 EDA 2014 |

Appeal from the Judgment of Sentence of December 6, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006496-2013

BEFORE:  DONOHUE, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 08, 2015**

Appellant, Angel Rivera, appeals from the judgment of sentence entered on December 6, 2013, as made final by the denial of post-sentence motions on April 9, 2014.  We affirm.[1]

_____

[1] On February 3, 2015, the Commonwealth, pursuant to 42 Pa.C.S.A. § 5988, applied to this Court for an order sealing the certified record.  ***See*** Application to Seal Certified Record, 2/3/15.  In relevant part, § 5988 provides:

**§ 5988. Victims of sexual or physical abuse**

(a)    Release of name prohibited.--Notwithstanding any other provision of law to the contrary, in a prosecution involving a minor victim of sexual or physical abuse, the name of the minor victim shall not be disclosed by officers or employees of the court to the public, and any records revealing the name of the minor victim shall not be open to public inspection.

*(Footnote Continued Next Page)*

The trial court summarized the underlying facts as follows.

On March 29, 2013, [Appellant] went to [the residence] of his 14-year-old niece, [L.B.], the [c]omplainant. [Appellant] entered [L.B.'s] bedroom, where he began to smoke marijuana. He asked [L.B.] if she wanted to smoke the marijuana. [L.B.] refused. [Appellant] then insisted that [L.B.] take a pill, which was later identified as Percocet. After ingesting the pill, [L.B] felt dizzy and she fell asleep.

When [L.B] awoke, she was lying on her stomach, with her pants and underwear around her ankles. [Appellant] was lying on top of her, naked. [L.B.] was sore in her vagina and anal area. She felt [that Appellant had attempted] to insert his penis inside of her vagina. She was able to get from underneath [Appellant]. She went to the bathroom. When she returned to her bedroom, [Appellant] was still there and he then began to feel [L.B's] breast[s] and vagina.

Trial Court Opinion, 8/28/14, at 2-3 (not paginated; footnote omitted).

The trial court summarized the ensuing procedural history in this case

as follows:

*(Footnote Continued)* ──────────────

\*　　\*　　\*

(b)　Penalty.--Any person who violates this section commits a misdemeanor of the third degree.

42 Pa.C.S.A. § 5988.

In its application, the Commonwealth alleged that the victim of Appellant's offenses was a minor since she was under the age of 18 at the time Appellant assaulted her. Application to Seal Certified Record, 2/3/15, at ¶ 2. In addition, the Commonwealth alleged that the certified record contains multiple documents that include the victim's full name. *Id*. at ¶ 6. Our review of the certified record confirms the accuracy of the Commonwealth's averments and Appellant did not respond to the Commonwealth's request. Accordingly, we shall grant the Commonwealth's request for relief.

[Appellant] was arrested on April 25, 2013. [On May 23, 2013, the Commonwealth filed a criminal information charging Appellant with multiple offenses: criminal attempt to commit rape of a substantially impaired person, 18 Pa.C.S.A. §§ 901(a) and 3121(a)(4); unlawful contact with minor, 18 Pa.C.S.A. § 6318(a); sexual assault, 18 Pa.C.S.A. § 3124.1; endangering welfare of children, 18 Pa.C.S.A. § 4304(a); criminal attempt to commit involuntary deviate sexual intercourse with a substantially impaired person, 18 Pa.C.S.A. §§ 901(a) and 3123(a)(4); indecent assault upon a substantially impaired person, 18 Pa.C.S.A. § 3126(a)(5); and corruption of minors, 18 Pa.C.S.A § 6301(a)(1)(i). Information, 5/23/13.][2]

On July 19, 201[3], [Appellant] entered a [negotiated] guilty plea to the charges of indecent assault and corruption of a minor. [Appellant, the Commonwealth, and the trial court executed a written guilty plea colloquy stating that Appellant would be sentenced to two to four years' imprisonment for the indecent assault conviction, followed by three years state sex offenders probation for the corruption of a minor conviction.] Following written and oral colloquies, the [t]rial [c]ourt accepted [Appellant's] guilty plea [on the record]. Sentencing was deferred pending [a] Megan's Law Assessment.[3] On November 18, 2013, sentencing was again deferred, to allow [Appellant] further investigation under Megan's Law.

On December 6, 2013, [Appellant] appeared before the [t]rial [c]ourt for sentencing. Prior to [the court's pronouncement of

_____

[2] Charges for aggravated indecent assault without consent (18 Pa.C.S.A. § 3125(a)(1)), harassment (18 Pa.C.S.A. § 2709(a)(1)), and sexual abuse of children (18 Pa.C.S.A. § 6312(b)) were dismissed at the conclusion of Appellant's May 16, 2013 preliminary hearing. A separate charge of criminal attempt to commit incest with a minor (18 Pa.C.S.A. §§ 901(a) and 4302(b)(2)) was later *nolle prossed* by the Commonwealth.

[3] Although the trial court refers to Megan's Law, we note that this statutory scheme expired on December 20, 2012. **See** Pa.C.S.A. §§ 9791-9799.9. The Sexual Offender Registration and Notification Act (SORNA) replaced Megan's Law. **See** 42 Pa.C.S.A. §§ 9799.10-9799.41. Since this discrepancy is immaterial to our disposition of this case, we did not alter the trial court's original references.

sentence, Appellant,] through counsel, moved to withdraw his guilty plea. Thereafter, [Appellant] personally addressed the [c]ourt. Following [Appellant's] statement, the [t]rial [c]ourt denied [Appellant's motion and sentenced him] to two to four years for the crime of indecent assault, followed by three years of probation for the crime of corrupting a minor. [This sentence reflected the terms of the negotiated guilty plea agreement entered between Appellant and the Commonwealth on July 19, 2013.]

On December 9, 2013, [Appellant], through counsel, filed a timely post-sentence motion, seeking to [withdraw his guilty plea]. On April 9, 2014, this motion was denied by operation of law. On April 11, 2014, [Appellant,] through counsel, filed a timely notice of appeal. On April 24, 2014, the [t]rial [c]ourt entered a [Pa.R.A.P.] 1925(b) [o]rder, directing [Appellant] to file a concise statement of errors complained of on appeal. On April 29, 29014, [Appellant] filed a timely [concise] statement. [The trial court issued its Rule 1925(a) opinion on August 28, 2014.]

Trial Court Opinion, 8/28/14, at 1-2 (not paginated; footnote in original).

Appellant's brief raises the following question for our review:

Whether the [trial] court erred in denying Appellant's motion to withdraw his guilty plea made prior to the imposition of sentence, where Appellant presented a fair and just reason for the withdrawal of the plea, and the Commonwealth would not have been substantially prejudiced by the withdrawal?

Appellant's Brief at 3.

Appellant argues that the trial court abused its discretion in denying his motion to withdraw his guilty plea. Initially, Appellant points out that the more generous, pre-sentence standard for withdrawing a guilty plea should apply since Appellant moved to withdraw his plea before the trial court formally imposed his punishment. Under this standard, Appellant argues that his assertion of actual innocence established a "fair and just" reason to

support withdrawal. Appellant concludes that the five-month delay between the date he entered his guilty plea and the date he moved to withdraw his plea was not so long as to prejudice the Commonwealth in its prosecution of this case.

In response, the Commonwealth claims that the stricter, post-sentence standard for withdrawal of a guilty plea should apply under the circumstances of this case. The Commonwealth points out that the more stringent "manifest injustice" standard applies since Appellant accepted a negotiated plea and was aware of his sentence before he filed his motion to withdraw. Using this standard, the Commonwealth argues that, since Appellant's plea was entered knowingly, intelligently, and voluntarily, no manifest injustice resulted from the trial court's refusal to permit Appellant to withdraw his plea. In the alternative, the Commonwealth argues that Appellant was not entitled to withdraw his plea even under the more lenient "fair and just reason" standard because he did not assert his actual innocence.

We recently elaborated on the principles and standards that govern a defendant's request to withdraw a guilty plea. In *Commonwealth v. Prendes*, 97 A.3d 337 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014), this Court stated:

> "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P

591(A); **Commonwealth v. Santos**, 301 A.2d 829, 830 (Pa. 1973). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made [b]efore sentencing ... should be liberally allowed." **Commonwealth v. Forbes**, 299 A.2d 268, 271 (Pa. 1973). "Thus, in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.' " **Id.** at 271. "If the trial court finds 'any fair and just reason', withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'" **Id.** As a general rule, "the mere articulation of innocence [is] a 'fair and just' reason for the pre-sentence withdrawal of a guilty plea unless the Commonwealth has demonstrated that it would be substantially prejudiced." **Commonwealth v. Katonka**, 33 A.3d 44, 46 (Pa. Super. 2011) (*en banc*) [].

[Of the considerations outlined in **Forbes**, "the critical one is the presence or lack of prejudice to the Commonwealth." **Commonwealth v. Boofer**, 375 A.2d 173, 174 (Pa. Super. 1977) (*citing* **Commonwealth v. McLaughlin**, 366 A.2d 238, 241 (Pa. 1976) (stating: "[T]he existence of substantial prejudice to the Commonwealth is the crucial factor in determining whether to allow a presentence withdraw of a guilty plea")). Generally speaking, "prejudice would require a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled." **Commonwealth v. Kirsch**, 930 A.2d 1282, 1286 (Pa. Super. 2007), *appeal denied*, 945 A.2d 168 (Pa. 2008). When a guilty plea is withdrawn before sentencing, the withdrawal usually does not substantially prejudice the Commonwealth if it simply places the parties "back in the pretrial stage of proceedings." **Id.** Mere speculation that witnesses would not appear at a subsequent trial or would change their stories does not alone rise to the level of substantial prejudice. **McLaughlin**, 366 A.2d at 241.]
In contrast, after the court has imposed a sentence, a defendant can withdraw his guilty plea "only where necessary to correct a manifest injustice." **Commonwealth v. Starr**, 301 A.2d 592, 595 (Pa. 1973). "[P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentencing-testing devices." **Commonwealth v. Kelly**, 5 A.3d 370, 377 (Pa. Super. 2010), *appeal denied*, 32 A.3d 1276 (Pa. 2011). If the appellant knows

the only possible sentence he can get for the crime to which he pled guilty, then any pre-sentence motion to withdraw the plea is akin to a post-sentence motion to withdraw the plea, and the "manifest injustice" standard will apply to the pre-sentence motion. *Commonwealth v. Lesko*, 467 A.2d 307, 310 (Pa. 1983).

To be valid [under the "manifest injustice" standard], a guilty plea must be knowingly, voluntarily and intelligently entered. *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." *Commonwealth v. Gunter*, 771 A.2d 767, 771 (Pa. 2001). The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Hodges*, 789 A.2d 764, 765 (Pa. Super. 2002) (*citing* Pa.R.Crim.P. 590). Under Rule 590, the court should confirm, *inter alia*, that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. *Commonwealth v. Watson*, 835 A.2d 786 (Pa. Super. 2003). The reviewing [c]ourt will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. *Commonwealth v. Muhammad*, 794 A.2d 378 (Pa. Super. 2002). Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. *Pollard*, *supra*.

*Prendes*, 97 A.3d at 351-354 (parallel citations omitted).

Initially, we agree with the Commonwealth that Appellant's request to withdraw his plea must be judged under the more stringent "manifest injustice" standard since Appellant was aware of the sentence he would receive as a result of his guilty pleas to indecent assault and corruption of a

minor. The notes of testimony from Appellant's plea hearing reflect that Appellant executed a written plea agreement and that the trial court thoroughly examined Appellant's comprehension of the terms of that agreement. In response to questions posed by the trial court, Appellant stated that: (1) he recognized the agreement; (2) he reviewed it with trial counsel; (3) trial counsel explained it to him; (4) he understood trial counsel's explanation of the document; and, (5) he freely and voluntarily signed the agreement. N.T., 7/19/13, at 4-5. On the first page of the document, under the heading "Plea Bargain or Agreement," the agreement states that the district attorney promised to recommend a sentence of two to four years' confinement followed by three years of state sex-offender probation.[4] Written Guilty Plea Colloquy, 7/19/13. Appellant, defense counsel, the district attorney, and the trial court signed the agreement. **Id.** At the conclusion of Appellant's plea hearing, the trial court accepted the **negotiated** plea agreement as having been knowingly, voluntarily, and intelligently entered by Appellant. N.T., 7/19/13, at 8-9. For each of these reasons, we conclude that, as in **Prendes**, the "manifest injustice" standard should apply since Appellant was fully aware of the sentence he would receive because of the guilty pleas that he entered. **See Prendes**, 97 A.3d at 354 (manifest injustice standard applies where defendant's plea

_____

[4] Ultimately, the trial court imposed a sentence that conformed to the terms of Appellant's negotiated guilty plea.

agreement includes negotiated sentence, trial court accepts guilty plea with the negotiated sentence, and defendant is fully aware of sentence he would receive).

We further conclude that, because Appellant tendered his guilty pleas in a knowing, voluntary, and intelligent fashion, he failed to establish that enforcement of his guilty pleas resulted in a manifest injustice. Relevant to this conclusion, we cite with approval the following findings of the trial court.

> On July 19, 2014, [Appellant] appeared before the [t]rial [c]ourt and at that time, he entered a guilty plea to the charges of indecent assault and corruption of a minor. Ancillary to his guilty plea, [Appellant] was subjected to thorough written and oral colloquies. The [t]rial [c]ourt reviewed the terms of the written guilty plea agreement with [Appellant] and thoroughly questioned [Appellant] as to [his] ability to understand, and his actual understanding of, the written plea agreement and what it meant to plead guilty. Pursuant to the written and oral colloquies, [Appellant] acknowledged the following facts.
>
> [Appellant] completed 11 years of school. He could read, write and understand the English language. He was not currently, nor had he ever, treated for mental illness. He was not under the influence of any substances, including prescribed medications, which would interfere with his ability to understand what was going on. He had reviewed the written plea agreement with his attorney, who had explained the terms of the agreement. He understood the terms of the agreement. He was aware of his rights and he understood the ramifications of the plea agreement upon those rights. [In particular, the trial court established that Appellant understood: (1) the maximum penalties and fines for his offenses; (2) his absolute right to proceed to trial before a judge or a jury; (3) his right to select 12 jurors from the community; (4) that any jury would have to reach a unanimous verdict; (5) that his guilty pleas extinguished his right to proceed to trial; (6) that the district attorney would have to prove his guilt beyond a reasonable doubt; (7) that his guilty pleas extinguished his right to challenge inculpatory evidence; (8) that a guilty plea could result in a violation of any parole or

probationary sentence he was serving; (9) that his guilty pleas extinguished certain pre-trial rights such as the right to seek suppression of inculpatory evidence; and, (10) that his guilty pleas limited the scope of any appeal.  N.T., 7/19/13, at 5-8.  Appellant] did not have any questions of the [c]ourt.  He was aware of the facts of the case, which had been read to him.  He committed the crimes of indecent assault and corruption of a minor and he was voluntarily pleading guilty to those crimes.

Following the colloquies, the [t]rial [c]ourt accepted [Appellant's] guilty plea[s], finding that [Appellant's] decision to plead guilty was made knowingly, intelligently and voluntarily.  Sentencing was deferred pending Megan's Law Assessment.  The [t]rial [c]ourt inquired as to whether a mental health evaluation was needed.  [Appellant's] counsel responded that he did not think so and [Appellant], himself, did not indicate otherwise.

Trial Court Opinion, 8/28/14, at 1-4 (not paginated).  We are satisfied, based on the record before us, that Appellant entered valid guilty pleas to indecent assault and corruption of minors on July 19, 2013.

Even if we were to apply the more lenient "fair and just reason" standard, we would conclude that Appellant is not entitled to relief. Appellant presented his request to withdraw his guilty pleas during the following exchange that took place at his December 6, 2013 sentencing hearing.

THE COURT:  Counsel?
[DEFENSE COUNSEL]:  Your Honor, I have a motion to withdraw my client's guilty plea.  I've talked to him.  He is maintaining his innocence.  There is some confusion on the deal and after consideration, he is not interested.

THE COURT:  What confusion is there on the deal?

[DEFENSE COUNSEL]:  Your Honor, my client has mental health issues.  And after talking to him, it seems like that was what the problem was when he originally accepted the offer.

THE COURT:  That's still not clear.  That's pretty vague to me,

[DEFENSE COUNSEL]:  Okay.  Well, I mean, he will address the [c]ourt as well.

THE COURT:  Okay.

[APPELLANT]:  I just got new evidence on the case.

THE COURT:  That has nothing to do with mental health issues.

[APPELLANT]:  No, I do.  I ain't too good, you know, reading and writing and something like that.  I've been taking medication since I was five years old.  I just wasn't sure; you know what I'm saying?  You know, in a situation like that I was confused, sir.  I was confused.  I apologize.

THE COURT:  Counsel?

[APPELLANT]:  I need some help.

THE COURT:  Counsel?

N.T., 12/6/13, at 3-4.

Based on the preceding exchange, it is evident that, while defense counsel made a passing reference to Appellant's actual innocence as a basis to grant the motion to withdraw, Appellant never mentioned his actual innocence as grounds for relief.[5]  On their face, Appellant's statements to the trial court referred only to unspecified new evidence, mental health

_____

[5] Read in context, even trial counsel's statements to the trial court suggest that mental health issues, not actual innocence, lay at the root of Appellant's motion to withdraw his guilty pleas.  *See* N.T., 12/6/13, at 3 ("Your Honor, my client has mental health issues.  And after talking to him, **it seems like [Appellant's mental health issues were] what the problem was when he originally accepted the offer**.") (emphasis added).

issues, difficulty with reading and writing, the use of medication, and confusion. Appellant, however, specifically disavowed each of these conditions and/or grounds for relief at his July 2013 plea hearing. In fact, Appellant nowhere asserted his actual innocence, disputed the factual basis for his pleas, or declared that he did not commit the instant offenses. Because Appellant never asserted his actual innocence, he failed to offer a fair and just reason in support of the withdrawal of his guilty pleas. *Compare Commonwealth v. Carrasquillo*, 78 A.3d 1120, 1123 (Pa. Super. 2013) (*en banc*) (allowing defendant to withdraw guilty plea where, despite rambling and outlandish statements, defendant asserted his actual innocence by declaring, "[he] didn't commit this crime"), *appeal granted*, 86 A.3d 830 (Pa. 2014). For each of these reasons, we hold that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty pleas.

Judgment of sentence affirmed. Commonwealth's application to seal certified record granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015